UNITED STATES DISTRICT COURT
DISTRICT OF MASACHUSETTS

-------------------------------------------------------------------------X
NANCY GESHKE, Mother And Natural Guardian
of N.K., a Minor, and NANCY GESHKE, Individually,

                              Plaintiffs,                    Civil Action No.___

        Vs.                                      **COMPLAINT**

                                              Plaintiffs Demand
CROCS, INC.,                                Trial by Jury
                            Defendant
-------------------------------------------------------------------------X

Plaintiffs, NANCY GESHKE, Mother and Natural Guardian of N.K., a minor, and

NANCY GESHKE, Individually, sue the defendant, CROCS, INC, by their attorneys, MILES

SIGEL, ESQ. and ROBINSON & YABLON, P.C., complaining of the defendant, sets forth as

follows:

**Jurisdiction and Venue**

1.      This is an action pursuant to California products liability law.  Jurisdiction of the

Court is predicated upon diversity of citizenship pursuant to 28 U.S.C. §1332 (a) (1) because the

dispute involves the Plaintiffs, who are a citizens of the State of California, and the Defendant, a

Colorado corporation, and because the amount in controversy is greater than $150,000.00.

2.      Venue is proper in this Court because the defendant conducts business here and

because the cause of action arose within this District, to wit, the MBTA Aquarium Station.

**Parties**

3.      At all times hereinafter mentioned, Plaintiffs were residents of California, residing in the town of Santa Monica.

4.      At all times hereinafter mentioned, defendant, CROCS, INC. ("CROCS") was a Colorado corporation, duly authorized to do business in the States of Massachusetts and California, with its principal place of business in Niwot, Colorado.

5.      At all times hereinafter mentioned, CROCS contracted to supply goods in the States of Massachusetts and California.

6.      At all times hereinafter mentioned, CROCS regularly did and solicited business and/or engages in other persistent courses of conduct and/or derived financial revenue from goods supplied in the States of Massachusetts and California.

7.      At all times hereinafter mentioned, CROCS expected, or reasonably should have expected its acts to have consequences in the States of California and Massachusetts.

8.      At all times hereinafter mentioned, CROCS was engaged in the business of designing, manufacturing, distributing, promoting, and selling its footwear, and, in particular footwear comprised of a proprietary closed-cell resin material.

**FIRST CAUSE OF ACTION**

9.      In 2002, CROCS began manufacturing, selling and distributing footwear comprised of a proprietary closed-cell resin material.

10.      In 2002, CROCS marketed its footwear as a slip-resistant shoe for boating and other outdoor use.

11.      Between 2002 and 2008, CROCS manufactured and marketed a line of "all purpose" footwear for children.

12.     Between 2002 and 2008, CROCS promoted, marketed and advertised its "all purpose" footwear in small sizes for children, in child-friendly colors, made use of Disney characters, and promoted Jibbitz, all in an effort to generate revenue from the sale of CROCS to parents of children.

13.     CROCS did engage in this course of promotion, marketing and sales, directly and indirectly through its distributors in the State of Tennessee.

14.     Prior to July 19, 2010, Plaintiff purchased a pair of children's size CROCS for N.K..

15.     At the time of the distribution and sale of said pair of CROCS, the footwear contained no safety features, safety guards or warnings of any kind.

16.     As of July 2010, CROCS had received in excess of 300 reports, directly and indirectly, that children wearing CROCS had been involved in entrapment incidents on moving escalators.

17.     When CROCS received these escalator entrapment reports from concerned parents, CROCS responded to the reports by claiming CROCS were safe.

18.     When CROCS received these escalator entrapment reports from concerned parents, CROCS responded to the reports by claiming CROCS was concerned about escalator safety.

19.     When CROCS received these escalator entrapment reports from concerned parents, CROCS responded to the reports by claiming CROCS was "looking into" or "investigating" the reported incidents.

20.     CROCS never "looked into" or "investigated" a single reported CROCS escalator entrapment report until *after* CROCS was sued in federal court in New York in 2008.

21. CROCS advised parents its footwear was "safe" when CROCS knew that the footwear was not safe on escalators.

22. CROCS claimed it was "concerned" about escalator safety, but CROCS did nothing whatsoever to advance that "concern" assuming the concern ever existed.

23. As early as September 14, 2006, CROCS had received so many escalator entrapment complaints, that its "Vice President and Co-Founder," Lyndon V. (Duke) Hanson III, represented, in writing, that CROCS has issued an "Engineering Change Order" to redesign the CROCS footwear hangtag to alert purchasers of CROCS of the need to ride escalators safely. Hanson assured the concerned parent that the escalator warning hangtags would be on all CROCS by the "holiday rush" of 2006.

24. CROCS failed to place the warning on its footwear as promised by Duke Hanson. A copy of the Hanson correspondence is annexed hereto as Exhibit "1".

25. In 2006, in response to reports of CROCS' shoes being sucked into escalators causing injuries to children, CROCS did issue statements to media that its shoes were safe and that the reported escalator incidents were the fault not of CROCS but rather the parents of the injured children and/or those responsible for maintenance and repair of escalators. CROCS further stated to the media that it was looking into the happening of such incidents and that it was concerned about escalator safety.

26. The statements issued by CROCS and its employees and/or agents, as referenced in ¶25, *supra*, were patently false. CROCS knowingly issued the aforementioned false statements in an effort to deflect blame and so as to maximize its corporate profits.

27. Prior to July 19, 2010, Plaintiff, Nancy Geshke did purchase a pair of children's CROCS for her daughter, the infant Plaintiff, in the State of California.

28.   At the time of the manufacture, distribution, and sale of said pair of CROCS footwear, the footwear contained no safety design features, safety guards and/or warnings of any kind.

29.   At the time of the manufacture, distribution and sale of said pair of CROCS, Defendant knew, or had reason to know that, despite its promotion, marketing and advertising, CROCS were not suitable and were unsafe as "all purpose shoes for comfort and fashion."

30.   At the time of the manufacture, distribution and sale of said pair of CROCS, Defendant knew, or had reason to know, of hundreds of prior reported incidents where young children wearing CROCS were injured when their CROCS were caught in escalators.  Defendant further knew that said prior reported incidents all involved claims of similar serious foot injuries to young children.

31.   On July 19, 2010, the infant Plaintiff N.K., while wearing the subject pair of CROCS, was severely and permanently injured when one of her CROCS shoes was caught in an escalator at the MBTA Aquarium Station in Boston, Massachusetts, causing her foot to be seriously injured as depicted in the two color photographs annexed as Exhibit "2".

32.   The aforesaid occurrence and the injuries resulting therefrom and suffered by the Plaintiffs were caused solely by reason of the negligence and carelessness of the Defendant in its design, manufacturing, testing, inspection, production, assembly, distribution, and sale of its CROCS footwear including the aforesaid pair of CROCS footwear worn by infant Plaintiff.

33.   By reason of the foregoing, Plaintiffs have been damaged and are entitled to compensatory damages in the amount of TWO MILLION DOLLARS ($2,000,000.00).

## SECOND CAUSE OF ACTION

34.    Plaintiffs, repeat, restate and reallege each and every allegation contained in paragraphs "1" through "33" with the same force and effect as if fully set forth herein.

35.    CROCS, in connection with its business activities aforementioned herein, made both express and implied warranties with regard to the aforesaid product; warranting that CROCS were fit, safe, capable and suitable for the use and purpose intended, and that CROCS were not defective.

36.    The aforesaid warranties and representations were false, misleading and inaccurate in that the aforesaid CROCS footwear was unsafe, dangerous and defective.

37.    Both express and implied warranties were breached by CROCS.

38.    Solely as a result of the aforesaid breaches of warranty, Plaintiffs suffered severe injuries and damages while using CROCS footwear for their warranted use and purpose.

39.    By reason of the foregoing, Plaintiffs have been damaged in the amount of TWO MILLION DOLLARS ($2,000,000.00).

## THIRD CAUSE OF ACTION

40.    Plaintiffs, repeat, restate and reallege each and every allegation contained in paragraphs "1" through "39" with the same force and effect as if fully set forth herein.

41.    At all times herein mentioned, defendant CROCS was aware of problems with regard to the safety and suitability of its footwear as manufactured, sold and marketed.

42.    Defendant, notwithstanding said knowledge, failed to design CROCS with adequate safety features and failed to notify and warn purchasers and users of its dangerous product, including plaintiffs herein.

43.     As a result of said failure to warn, CROCS is liable to Plaintiffs for the injuries and damages they suffered.

44.     By reason of the foregoing, Plaintiffs have been damaged in the amount of TWO MILLION DOLLARS ($2,000,000.00).

## FOURTH CAUSE OF ACTION

45.     Plaintiffs, repeat, restate and reallege each and every allegation contained in paragraphs "1" through "44" with the same force and effect as if fully set forth herein.

46.     That the Plaintiff, individually, is the mother and natural guardian of the infant-plaintiff, N.K.

47.     That by reason of the foregoing incident, Plaintiff was caused to sustain pecuniary losses due to the injuries suffered by her daughter, N.K.

48.     That by reason of the foregoing incident, Plaintiff was deprived of her daughter's services stemming from the serious nature and severity of infant Plaintiff, N.K.'s injuries, incurred substantial expenses and was forced to provide services on her behalf.

49.     By reason of the foregoing, Plaintiffs have been damaged in the amount of ONE MILLION DOLLARS ($1,000,000.00).

## FIFTH CAUSE OF ACTION

50.     Plaintiffs, repeat, restate and reallege each and every allegation contained in paragraphs "1" through "49" with the same force and effect as if fully set forth herein.

51.     The acts and omissions of CROCS, demonstrate a willful pattern of wanton and depraved indifference to the likelihood of harm to children as a result of product defects in CROCS' footwear.

52.     At every crucial juncture, when the onus was upon CROCS to modify its footwear and its marketing so as to warn consumers of dangers known to CROCS, defendant instead made false and misleading statements in an effort to maximize its corporate profits, regardless of the known risks of injuries to young and innocent children.

53.     When confronted with incident upon incident of children being injured due to produce defects in its footwear, rather than act to protect children and inform their parents and consumers of known dangers, CROCS  instead issued false statements, baselessly attempting to blame persons and entities who were wholly free from fault.

54.     The acts and omissions of CROCS, as detailed, *supra*, demonstrate a high degree of moral turpitude warranting the imposition of punitive and/or exemplary damages.

55.   By reason of the foregoing, Plaintiffs are entitled to an award of punitive and/or exemplary damages as against CROCS in an amount of FOUR MILLION DOLLARS ($4,000,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendant, CROCS, for compensatory and punitive damages in the amounts set forth above, together with pre-judgment and post-judgment interest and costs and any other such other and further relief as may be granted by the Court, including but not limited to the costs and disbursements of this action.

For this cause of action, the Plaintiff demands a trial by jury of all issues so triable

Plaintiff by her attorney
/**s**/ Miles Siegel
BBO# 461720
Ten Winthrop Square
Boston, MA 02110
617-350-0100
Fax: 617-426-5251
milesiegel@juno.com

**ROBINSON & YABLON, P.C.**
**(pending pro hac vice admission)**

/s/Andrew M. Laskin, (AL9379)
ALaskin@robyablaw.com
/s/Joel H. Robinson (JR6546)
jrobinson@robyablaw.com
232 Madison Avenue, Suite 1200
New York, New York 10016
(212) 725-8566
Fax: 212-725-8567